STATE OF NORTH CAROLINA v. IRENE BOOMER, CLEVELAND ROBERTS, AND ERVING ROBERTS

No. 764SC917

(Filed 1 June 1977)

1. Larceny § 7— larceny of hogs — identification of hogs — sufficiency of evidence

In a prosecution for felonious larceny of three hogs having a value of $225, evidence was sufficient to show that two feeder pigs identified by the owner and his hand at a livestock market to which defendants sold the pigs were the same feeder pigs allegedly stolen where the evidence tended to show that that particular livestock market did not normally have feeder pigs on its lot because of higher prices prevailing elsewhere; the employee of the market testified that he put the pigs sold by defendants in a separate pen segregated from the other stock; the pigs identified by the owner and his hand were scratched and bruised; tracks on the owner's land indicated that the pigs had been dragged away; the owner's farm hand specifically identified one of the pigs from a peculiar rupture associated with its castration; and the employee of the livestock market had noted the ruptured incision on the castrated pig when defendants claimed the pig was a boar and tried to explain the rupture.

2. Larceny § 7— larceny of hogs — possession of recently stolen property — sufficiency of evidence

The issue of felonious larceny of three hogs having a value of $225 was properly submitted to the jury under the doctrine of possession of recently stolen property where the evidence tended to show that within a span of less than three hours and fifteen minutes, one top hog and two feeder pigs were taken from the owner's hog pen, dragged some eleven hundred yards to a tobacco barn, enclosed in the tobacco barn some period of time, subsequently loaded into an automobile, and driven to a livestock market where the two feeder pigs, valued between $120 and $130, were sold by defendants. The fact that the top hog, valued at $100, was not actually seen in defendants' possession did not preclude a verdict of guilty of felonious larceny, since G.S. 14-72 requires the State to prove the value of the "property taken," not the property possessed by the accused, to be in excess of $200.

3. Larceny § 4— larceny of hogs — sufficiency of description in indict-
   ment

   In a prosecution for felonious larceny the description of the stolen
   property in the indictment as "three hogs" was sufficiently certain,
   and it was not required that the property be described as one top
   hog and two feeder pigs.

APPEAL by defendants from *Lanier, Judge.* Judgment en-
tered 8 June 1976 in Superior Court, JONES County. Heard in
the Court of Appeals 12 April 1977.

Defendants were indicted for the felonious larceny of three
hogs having a value of $225.00. They were also indicted for
feloniously receiving the said hogs, knowing them to have been
stolen.

At trial the State presented evidence which tended to show
the following: Ward Parker owned and raised for market forty
hogs which he kept at various places on his farm. On the
morning of 9 March 1976 at about 9:30 a.m., Parker and an
employee went to one of the locations to feed and chcek on the
animals. The particular location consisted of approximately an
acre of land enclosed by an electrified fence which also con-
tained a pen. At the morning feeding there were eight feeder
pigs weighing approximately one hundred pounds each in the
pen. Within the fenced area there were nine top hogs, each
weighing around two hundred pounds.

Parker went back to the pen between 1:00 p.m. and 2:00
p.m. of the same day. He noticed that two feeder pigs and one
top hog were missing. It had been raining intermittently
during the day, and because of the condition of the ground,
Parker could discern tracks indicating the animals had been
dragged away. The sheriff was notified. When the deputy sher-
iff arrived at the scene, he discovered three distinct sets of
tracks of a type that would be made if animals were being
pulled or dragged. He followed the tracks some eleven hundred
yards along a railroad track, across a marsh to a tobacco barn.
Inside the barn he observed hoof prints. Outside the barn he
found tire marks indicating that a car had been backed up to
the barn. The tobacco barn was some three hundred yards away
from the defendants' residence.

At approximately 12:45 p.m. on 9 March 1976, the defend-
ants pulled up to the pens of the Trenton Livestock Market in
a dark colored Chevrolet with a cream colored top. One of the

male defendants asked an employee of the market what price top hogs were bringing. Upon receiving an answer, the two male defendants opened the trunk which contained two feeder pigs in bruised and battered condition. The employee of the livestock market informed defendants that their animals were not top hogs but were feeder pigs. He told them that they could get twice as much money as he was authorized to pay if they sold the animals at a feeder pig sale. The defendants sold the pigs to Trenton Livestock Market. The feeder pigs weighed a total of one hundred seventy-five pounds. The employee became suspicious when the defendants told him one of the pigs was a boar, even though it had been castrated. He put the pigs in a separate pen and wrote down the license number of defendants' car. At trial the employee identified the defendants as the persons who had sold him the pigs. Further evidence revealed that the car was registered to defendant Boomer.

On 10 March 1976 Parker, his farm hand, and the deputy sheriff went to the Trenton Livestock Market, and Parker and his hand identified the two feeder pigs. The top hog was never found. The State introduced further evidence that tended to show that the market price for top hogs was in the vicinity of fifty cents per pound. Parker was of the opinion that his missing top hog weighed two hundred pounds, thus giving it a fair market value of $100.00. The market price for feeder pigs over fifty pounds was from seventy to seventy-five cents a pound, thus giving them a fair market value of between $120.00 and $130.00.

At the close of the State's evidence the trial court dismissed the count of receiving. Defendants moved for nonsuit. Their motion was denied. Defendants did not put on evidence. The case was submitted to the jury under instructions for both felonious larceny and misdemeanor larceny. The jury returned a verdict of guilty of felonious larceny, and judgment imposing imprisonment was entered.

*Attorney General Edmisten, by Assistant Attorney General Isham B. Hudson, Jr., for the State.*

*Brock & Foy, by Louis F. Foy, Jr., for the defendants.*

BROCK, Chief Judge.

Defendants have brought forward their sixth, seventh, and ninth assignments of error in three arguments. In the first

of these they argue that the trial court erred in denying their motion for nonsuit as to felony and misdemeanor larceny; in the second they maintain that there was insufficient evidence to submit an issue of felony larceny to the jury; and in the third they contend that there was insufficient evidence to support a verdict of guilty of felony larceny. These three variously worded assignments of error present but one question—whether the State's evidence was sufficient to withstand motion for nonsuit. If it was, it constituted substantial evidence warranting submission of the issue to the jury on the one hand and sufficient evidence to support the verdict on the other.

[1] Defendants argue that their motion for nonsuit as to any charge of larceny should have been granted because the State's evidence was insufficient to show that the two feeder pigs identified by the owner and his hand at the livestock market were the same feeder pigs allegedly stolen. We disagree. The State's evidence tended to show that the Trenton Livestock Market did not normally have feeder pigs on its lot because of higher prices prevailing elsewhere. The employee of the market testified that he put the pigs in a separate pen segregated from other stock. Testimony showed that the pigs identified by Parker and his hand were scratched and bruised. Parker's farm hand specifically identified one of the pigs from a peculiar rupture associated with its castration. The employee of the livestock market had noted the ruptured incision on the castrated pig when one of the defendants claimed the pig was a boar and tried to explain the rupture. Taken in the light most favorable to the State, the evidence identifying the feeder pigs as the ones stolen was sufficient to submit to the jury.

[2] Next defendants contend that even if the evidence is sufficient to identify the two feeder pigs as the ones stolen, the evidence is nevertheless insufficient to show felonious larceny. They argue correctly that the State had to, and did in fact, rely on the theory of possession of recently stolen property. Defendants go on to argue that if larceny was shown at all through the possession, it could only be misdemeanor larceny because of the $120.00 value of the feeder pigs. We disagree. It is well settled that all of the essential elements of larceny must be established by sufficient, competent evidence; and the essential facts can be proved by circumstantial evidence where the circumstance raises a logical inference of the fact to be proved and not just a mere suspicion or conjecture. *State v. Delk*, 212

N.C. 631, 194 S.E. 94 (1937); 6 Strong, N. C. Index 3d, Evidence, § 21, p. 60. Before the presumption of guilt stemming from possession of recently stolen property can attach, the State must show by positive or circumstantial evidence a *prima facie* larceny of the goods. 50 Am. Jur. 2d, Larceny, § 149, p. 330.

At trial the State offered evidence to the effect that Parker owned the hogs; that at 9:30 a.m. on 9 March 1976, Parker and his hand accounted for all the hogs; that at 1:00 p.m. the same day, three were missing; and that three distinct sets of drag marks led from the pen area to a tobacco barn some eleven hundred yards away, wherein hog tracks were observed. The latter is circumstantial evidence of taking and asportation. It is also substantial evidence in that it raises a logical inference of taking and asportation of three animals rather than a mere conjecture or surmise.

In their tenth assignment of error defendants maintain that the only evidence of possession showed actual possession not of "the three hogs," but of only two of the hogs—the two feeder pigs. Possession of a part of the recently stolen property under some circumstances warrants the inference that the accused stole all of it. The inference of guilt is not always repelled by the fact that only part of the recently stolen property is found in the possession of the accused. The evidence in this case tends to show that within a span of less than three hours and fifteen minutes, one top hog and two feeder pigs were taken from Parker's hog pen, dragged some eleven hundred yards to a tobacco barn, enclosed in the tobacco barn some period of time, subsequently loaded into an automobile, and driven to the Trenton Livestock Market where the two feeder pigs were sold. This evidence supports a strong inference that the top hog and the two feeder pigs were taken from Parker's hog pen at the same time by the same persons, dragged to the tobacco barn at the same time by the same persons, enclosed in the tobacco barn at the same time by the same persons, and loaded into one vehicle at the same time by the same persons. Such evidence also supports a strong inference that the persons who possessed and sold the two feeder pigs are the same persons who stole and possessed the top hog and the two feeder pigs. The only thing left to conjecture is how and where the persons disposed of the top hog. We hold, therefore, that the issue of

felonious larceny was properly submitted to the jury under the doctrine of possession of recently stolen property.

The State further produced competent evidence showing the fair market value of the three hogs to be in excess of $200.00. General Statute 14-72 requires the State to prove the value of the "property taken," not the property possessed by the accused, to be in excess of $200.00. Taken together, the evidence substantially showed all the elements of felonious larceny.

What is substantial evidence is for the court to decide, but what the evidence proves or fails to prove is for the jury, it being the jury's province to pass on circumstantial evidence and determine whether it excludes every other reasonable hypothesis. *State v. Cotten,* 2 N.C. App. 305, 163 S.E. 2d 100 (1968). The jury was instructed on both felonious larceny and misdemeanor larceny. The evidence before it was substantial on all material elements of both offenses, and its determination was consonant with that evidence.

[3] In defendants' eleventh assignment of error brought forward in their final argument, defendants contend that the trial court erred in denying their motion to arrest judgment. They argue that the indictments against them were fatally defective in that the description of the property stolen was not sufficiently certain. The indictments described the property taken as "three hogs" rather than one top hog and two feeder pigs. This argument is without merit.

"A motion in arrest of judgment on the ground of a defective indictment will not be granted unless it is so defective that judgment cannot be pronounced on it." *State v. Martin,* 13 N.C. App. 613, 186 S.E. 2d 647 (1972). Whether the description of property in a larceny indictment is sufficient or so defective as to be void depends on the certainty educed by the description. The property alleged to have been taken must be described with "reasonable certainty." 50 Am. Jur. 2d, Larceny, § 124, p. 300.

Reasonable certainty is attained when the description reasonably informs the accused of the transaction meant, when it protects the accused in the event of subsequent prosecutions for the same offense, when it enables the court to see that the property described is the subject of larceny, and when it enables the jury to say that the article proved to be stolen is the same

as the one described. *State v. Caylor,* 178 N.C. 807, 101 S.E. 627 (1919). When describing an animal, it is sufficient to refer to it by the name commonly applied to animals of its kind without further description. A specific description of the animal, such as its color, age, weight, sex, markings or brand, is not necessary. 50 Am. Jur. 2d, Larceny, § 127, p. 303. The general term "hogs" in the indictment sufficiently describes the animals taken so as to identify them with reasonable certainty. The motion in arrest of judgment was properly denied.

No error.

Judges VAUGHN and CLARK concur.