STATE OF NORTH CAROLINA v. WILL FRANK ROSS AND JOHN E. FULWILEY

No. 7927SC620

(Filed 18 December 1979)

**Burglary and Unlawful Breakings § 5.9; Larceny § 7.5— breaking and entering store — larceny of goods — defendant present at crime scene — insufficiency of evidence to convict**

     In a prosecution for breaking and entering and larceny, the trial court erred in denying defendants' motions for nonsuit where the evidence tended to show that defendants were present at the scene at the time the crimes were committed, but one defendant was intoxicated throughout the events in question and there was no direct evidence that he was one of the perpetrators of the crimes; the other defendant stopped his car because he was having radiator trouble; his passengers, who had paid him to drive them to the city, left the car and broke into the store in question; and the fact that defendant jumped into his car when the store alarm went off was insufficient without more to show participation, assistance, or encouragement in the perpetration of the crimes.

APPEAL by defendants from *Burroughs, Judge.* Judgment entered 9 February 1979 and amended judgment enter 20 March 1979 in Superior Court, GASTON County. Heard in the Court of Appeals 28 November 1979.

Each defendant was charged in a bill of indictment for breaking and entering and larceny. The cases were consolidated for trial, and each defendant was convicted as charged. Defendants appealed from sentences of active confinement.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Associate Attorney James C. Gulick, for the State.*

*Public Defender Curtis O. Harris, 27th A Judicial District, for defendant appellants.*

ERWIN, Judge.

Defendants present one question on appeal: "Did the Court err in failing to dismiss the cases against the defendants in that the evidence presented by the State showed only that the defendants were present at the scene of the crime?" We answer, "Yes."

Upon motion for judgment as of nonsuit, the evidence must be considered in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom. When there is sufficient evidence, direct or circumstantial, by which the jury could find defendants had committed the offenses charged, then the motion should be denied. *State v. Hunter*, 290 N.C. 556, 227 S.E. 2d 535 (1976), *cert. denied*, 429 U.S. 1093, 51 L.Ed. 2d 539, 97 S.Ct. 1106 (1977); *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); 4 Strong's N.C. Index 3d, Criminal Law, § 106, p. 547.

The State's evidence, when considered in the light most favorable to it, tended to show that near 10:00 p.m. on 3 October 1978, Officer Isenhour of the Mount Holly Police Department was driving a 1979 Ford Pickup and observed a car parked in front of Leader's Department Store in plain view from the police station 200 feet away. Defendant Ross, a Mr. Brown, a Miss Gillard, and defendant Fulwiley were standing outside the car. The hood and trunk of the vehicle were up, and defendant Ross was "under the hood." Isenhour drove to the police station and notified Officer McCumbee, who was on duty, about the car. As Isenhour came out of the station, he heard glass break and saw two subjects running from the store, one of whom was Mr. Brown, who got into the passenger side of the car. The department store alarm went off at the police department.

Other officers testified that they saw Brown run from the store, and when they heard a loud noise, three people jumped into the car. When officers arrived, defendant Ross was in the driver's seat, Mr. Brown, also known as Don Curatin, was in the right, front passenger seat, and Miss Gillard and defendant Fulwiley were in the back seat. Officer McCumbee testified that Brown, who gave the officer a false name, had carried a bundle of clothes toward the car. When officers arrived, the car motor was not running. Isenhour did not notice whether water had been poured around the radiator, although there was a thermos jug in the car

trunk. The bundle of clothing from Leader's Department Store valued at $500 was outside the car beside the front, passenger door.

Women's clothing in a plastic bag and trousers in a bed sheet were found in the trunk of the car. These items were identified as coming from a previous break-in. All of the glass in the front door of the store was broken out, and there was a towel inside the store wrapped around a piece of concrete. No one in the group had authority to enter the store.

Defendants' evidence tended to show that defendants had met Curatin and Gillard at Lynn's Smoke Shop in Charlotte. Defendant Ross had agreed for pay to carry Curatin and Gillard to Freedom Village Mall in Charlotte and had subsequently agreed to carry them to Mount Holly for five dollars. During the drive to Mount Holly, Curatin and Gillard did not discuss what was to happen in Mount Holly. Following Curatin's directions, Ross turned at the first red light in Mount Holly. His car was smoking, and he pulled over to the front of Leader's Department Store when the indicator light in his car indicated that his radiator was running hot. Ross opened the car hood, opened the trunk, and took out a thermos bottle filled with water, which he kept for such an occasion. Curatin had gotten out of the car when Ross was pouring the water in the radiator. He saw Curatin take a towel and hit the window in Leader's Department Store. He told Curatin not to do it, closed his hood, and jumped in the car after he saw Curatin throw the towel through the window.

Throughout the occurrence of these events, defendant Fulwiley, Ross' brother, was intoxicated, had taken valium, and did not remember any break-in or recall getting out of the car, although he did recall that "his brother may have been fixing on the car because . . . he told me [Fulwiley] his radiator was messed up." After the officers arrived, defendant Fulwiley was arrested and placed in the drunk tank.

In *State v. Ham*, 238 N.C. 94, 76 S.E. 2d 346 (1953), our Supreme Court held, in substance, that in order to render one who does not actually participate in the commission of the crime guilty of the offense committed, there must be some evidence tending to show that he, by word or deed, gave active encouragement to the perpetrator or perpetrators of the crime, or by his

conduct made it known to such perpetrator or perpetrators that he was standing by to render assistance when and if it should become necessary. The evidence in the record in the instant case does not present sufficient inferences to warrant verdicts finding defendants guilty of the alleged crimes.

In 4 Strong's N.C. Index 3d, Criminal Law, § 104, p. 543, the law as it relates to the consideration of defendants' evidence on appellate review of a motion to nonsuit is set forth in pertinent part as follows:

> "Defendant's evidence which explains or makes clear that which has been offered by the state may be considered, insofar as it is not in conflict therewith. This rule also permits the consideration of defendant's evidence which rebuts the inference of guilt when it is not inconsistent with the state's evidence, and exculpatory statements offered in evidence by the state are also properly considered on motion for nonsuit." (Footnotes omitted.)

*See also State v. Evans* and *State v. Britton* and *State v. Hairston*, 279 N.C. 447, 183 S.E. 2d 540 (1971). When properly viewed, defendants' evidence rebuts the inference of guilt arising from the State's evidence.

In *State v. Evans, supra,* three defendants had entered a fast-food restaurant. Defendant Britton had merely stood in front of the counter. Defendant Evans had proceeded into the kitchen and informed the employees of the restaurant that they were being held up. Defendant Hairston had entered the premises carrying a loaded shotgun. Our Supreme Court held that nonsuit should have been entered for defendant Britton, because his mere presence at the scene of the crime and at the time of the commission did not make him a principal in the second degree. In *State v. Evans, supra,* all of the defendants testified that Britton had been picked up by Evans and Hairston some five minutes earlier for the sole purpose of giving him a ride to his destination and that there was no conversation of consequence between Britton and the other defendants or between Evans and Hairston in his presence concerning any robbery of the business establishment.

In the present case, defendants' evidence indicates that they knew nothing of Curatin's and Gillard's intent to break into and enter the Leader's Department Store.

Miss Gillard testified that she and Curatin had not discussed their plans with the defendants but had used them as "patsies." She further stated that defendant Ross had stopped the car because the radiator was running hot and not for the purpose of assisting in the perpetration of the offenses charged. Defendants' evidence also indicates that Ross had carried Curatin and Gillard to Mount Holly only because he was paid to do so. This evidence does not conflict with the State's evidence, which tends to show that Ross was under the hood of the car but had jumped in his car when the store alarm went off. Ross' jumping into the car when the store alarm went off is insufficient without more to show participation, assistance, or encouragement in the perpetration of the crimes.

All the evidence indicates that defendant Fulwiley was intoxicated throughout the occurrence of the events in question.

The facts herein are sufficiently analogous to those in *State v. Evans, supra,* and are governed thereby. We hold that defendants' motions for nonsuit should have been allowed. *See State v. Aycoth,* 272 N.C. 48, 157 S.E. 2d 655 (1967).

The judgments in Case Nos. 78CRS23392 and 78CRS23393 are

Reversed.

Judges CLARK and ARNOLD concur.