IN RE W.R.

[179 N.C. App. 642 (2006)]

IN THE MATTER OF: W.R.

No. COA05-1602

(Filed 3 October 2006)

**Juveniles— delinquency—statement in assistant principal's office—custodial interrogation**

There was plain error in the admission of a juvenile's statement that he had brought a knife to school the day before, and an order adjudicating him delinquent was vacated. A juvenile in custody must be advised of his rights; under the totality of the circumstances here, a reasonable person would have believed that he was restrained to a degree associated with formal arrest. There was prejudice because the juvenile's statement was the only evidence introduced to support the allegation. N.C.G.S. § 7B-2101(a).

Appeal by the juvenile from an adjudication of delinquency entered 21 January 2005 by Judge Lillian B. Jordan and a final juvenile delinquency disposition and order entered 4 March 2005 by Judge Wendy M. Enochs in Guilford County District Court. Heard in the Court of Appeals 16 August 2006.

*Attorney General Roy Cooper, by Assistant Attorney General John A. Payne, for the State.*

*Michelle FormyDuval Lynch for the juvenile-appellant.*

BRYANT, Judge.

W.R.[1] (the juvenile) appeals from an adjudication of delinquency entered 21 January 2005 and a final juvenile delinquency disposition and order entered 4 March 2005 placing him in Level One probation for a period of six months. For the reasons below we vacate the orders of the trial court.

*Facts & Procedural History*

At the time of the events in question, W.R. was fourteen-years-old, attending the seventh grade at Allen Middle School in Greensboro, North Carolina. On 19 August 2005, Jesse Pratt, the Principal of Allen Middle School, received a call from a parent of one of the children attending Allen Middle School. As a result of the call, Mr. Pratt and

---

1. Initials have been used throughout to protect the identity of the juvenile.

Dr. Judy Flake, the Assistant Principal of Allen Middle School, took W.R. out of his classroom and escorted him to Dr. Flake's office. While in Dr. Flake's office, Mr. Pratt and Dr. Flake asked W.R. several times whether or not he had something at school that he should not have had in his possession. W.R. initially answered that he did not.

At some point during the initial questioning, the School Resource Officer (Officer Warren) joined Mr. Pratt and Dr. Flake in their questioning of W.R. After about fifteen minutes of questioning, W.R. was asked to empty his pockets and Officer Warren did a "basic search" to ensure W.R. was not carrying a weapon. The search did not reveal any weapons in W.R.'s possession.

At various times during the questioning, Mr. Pratt, Dr. Flake, and Officer Warren would leave the office to conduct other aspects of their investigation; however, W.R. was never left unsupervised at any time and Officer Warren remained in the office during most of the investigation. After questioning other students, Dr. Flake confronted W.R. with their allegations that, the day before, W.R. had brought a knife to school. At this point, after approximately thirty minutes of off-and-on questioning in Dr. Flake's office, W.R. admitted possessing a knife the day before, both at school and on the bus.

During his investigation of this incident, Mr. Pratt discovered that W.R. lived outside of the school district served by Allen Middle School. As a result, Mr. Pratt and Dr. Flake decided that W.R. should not be allowed to return to class. Instead W.R. was kept in Dr. Flake's office, under the supervision of Officer Warren, until his mother arrived approximately ninety minutes later to pick him up.

On 7 October 2004, Officer Warren filed a Petition in Guilford Court alleging W.R. was a delinquent juvenile as defined by N.C. Gen. Stat. § 7B-1501(7) in that he unlawfully and willfully possessed a weapon on school property in violation of N.C. Gen. Stat. § 14-269.2(d). An adjudication hearing was held in this matter on 7 January 2005, and on 21 January 2005, the Honorable Lillian B. Jordan entered an order adjudicating W.R. delinquent for the reasons stated in the Petition. A subsequent dispositional hearing took place on 17 February 2005 before the Honorable Wendy M. Enochs and, on 4 March 2005, W.R. was placed on Level One probation for six months. W.R. appeals.

The dispositive issue before this Court is whether the trial court erred in admitting into evidence the juvenile's admission that he pos-

sessed a knife on school property. At the adjudication hearing, the juvenile's admission was allowed into evidence without any objection. The juvenile now argues it was plain error to admit his statement because he was never advised of his constitutional and statutory rights prior to the questioning by Mr. Pratt, Dr. Flake and Officer Warren.

Where evidence is admitted without objection, and subsequently contested as error on appeal, this Court must review the issue under the plain error standard of review. *State v. Cummings*, 346 N.C. 291, 314, 488 S.E.2d 550, 563 (1997) (plain error review is appropriate "when the issue involves . . . rulings on the admissibility of evidence"), *cert. denied*, 522 U.S. 1092, 139 L. Ed. 2d 873 (1998).

> The plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" . . . .

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982) (footnotes omitted)). Thus, in addition to showing that the admission of his statement was error, the juvenile *"has the burden of showing . . .* (i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair [hearing]." *State v. Cummings*, 352 N.C. 600, 636, 536 S.E.2d 36, 61 (2000) (citation and quotations omitted).

The juvenile argues his admission that he possessed a knife on school property was obtained in violation of his rights granted under the Fifth Amendment to the United States Constitution and Chapter 7B, Article 21, of the General Statutes of North Carolina. The Fifth Amendment to the United States Constitution guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. The United States Supreme Court has held that the prohibition against self-incrimination requires that, prior to a custodial interrogation, a defendant must be advised

that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda v. Arizona,* 384 U.S. 436, 479, 16 L. Ed. 2d 694, 726 (1966).

Under the North Carolina Juvenile Code, a juvenile in custody must be advised prior to questioning that: (1) he has the right to remain silent; (2) any statement he makes can be and may be used against him; (3) that he has a right to have a parent, guardian, or custodian present during questioning; (4) that he has a right to consult with an attorney and that one will be appointed for him if he is not represented and wants representation. N.C. Gen. Stat. § 7B-2101(a) (2005). Additionally, before a trial court may admit into evidence a statement resulting from the custodial interrogation of the juvenile, "the court shall find that the juvenile knowingly, willingly, and understandingly waived [these] rights." N.C.G.S. § 7B-2101(d) (2005).

Our Supreme Court has held that the rights protected by *Miranda* and N.C.G.S. § 7B-2101 apply only to custodial interrogations. *State v. Gaines,* 345 N.C. 647, 661, 483 S.E.2d 396, 404-05, *cert. denied,* 522 U.S. 900, 139 L. Ed. 2d 177 (1997). To determine whether a juvenile is in custody for these purposes, the test is "whether a reasonable person in [the juvenile's] position, under the totality of the circumstances, would have believed that he was under arrest or was restrained in his movement to the degree associated with a formal arrest." *State v. Buchanan,* 353 N.C. 332, 339-40, 543 S.E.2d 823, 828 (2001). "This is an objective test, based upon a reasonable person standard, and is to be applied on a case-by-case basis considering all the facts and circumstances." *State v. Jones,* 153 N.C. App. 358, 365, 570 S.E.2d 128, 134 (2002) (citations and quotations omitted). Under this test, the trial court should consider the juvenile's age in ruling on the admissibility of a confession, however, the youth of a juvenile "will not preclude the admission of his inculpatory statement absent mistreatment or coercion by the police officers." *State v. Fincher,* 309 N.C. 1, 8, 305 S.E.2d 685, 690 (1983) (citation omitted). Further, this Court has held that a juvenile is not in custody when the juvenile is questioned by school officials in a school office and no law enforcement officers or agents of law enforcement are present. *In re Phillips,* 128 N.C. App. 732, 497 S.E.2d 292, *disc. review denied,* 348 N.C. 283, 501 S.E.2d 919 (1998).

**IN RE W.R.**

[179 N.C. App. 642 (2006)]

The case at hand is clearly distinguishable from *Phillips*. Here, the juvenile, a fourteen-year-old boy in Middle School, was repeatedly questioned over the course of thirty minutes. The record before this Court indicates the juvenile was questioned not only by the Principal and an Assistant Principal of the school, but also by Officer Warren, the School Resource Officer, an officer of the Greensboro Police Department. The record also shows the juvenile repeatedly denied having anything with him on school property the day before. The questioning took place in the office of an Assistant Principal of the school and the juvenile was kept in the office under the supervision of Officer Warren while both the Principal and Assistant Principal stepped out to interview other students. There is nothing in the record to indicate the juvenile was free to leave; to the contrary, the juvenile was detained under Officer Warren's supervision until his mother picked him up, approximately one and one-half hours later. While it is unclear exactly when Officer Warren joined the questioning, it was sometime before he searched the juvenile, fifteen minutes into the questioning. It was only after this search by a law enforcement officer that the juvenile admitted having brought a knife onto school property the day before. Given the totality of these circumstances, a reasonable person standing in the place of the juvenile would have believed that he was restrained in his movement to the degree associated with a formal arrest. Therefore, the admission into evidence of the juvenile's statement admitting that he brought a knife onto school property was error.

Having found it was error to admit the juvenile's statement, the juvenile must also show that the error was so fundamental as to result in a miscarriage of justice or denial of a fair hearing. At the adjudicatory hearing, the juvenile's statement was the only evidence introduced to support the allegation that he had brought a weapon onto school property. As the trial court clearly acknowledged: "Well, the only evidence is that he said he did. I guess his confession is as good as any anybody else's." Without the juvenile's statement, the trial court could not have adjudicated the juvenile delinquent. For the reasons stated above, the juvenile order adjudicating respondent delinquent and the subsequent dispositional order are vacated.

Vacated.

Judges McGEE and ELMORE concur.