**IN RE A.N.C.**

[225 N.C. App. 315 (2013)]

IN THE MATTER OF A.N.C., JR.

No. COA12-482

Filed 5 February 2013

**1. Appeal and Error—preservation of issues—no objection at trial—custodial interrogation of juvenile—plain error review**

A juvenile's challenges to the admission of his statement to an officer were reviewed with a plain error standard where the juvenile did not assert his challenge in the court below. The North Carolina Supreme Court has flatly held that challenges to the admissibility of evidence based upon N.C.G.S. § 7B-2101 must be raised by means of a motion to suppress in order to preserve any challenge to the admission of such evidence for appellate review.

**2. Confessions and Incriminating Statements—juvenile—custodial interrogation**

An officer did not subject a juvenile to custodial interrogation during the course of a roadside investigation into the accident in which the juvenile was involved and the officer's testimony that the juvenile acknowledged having driven the vehicle involved in the accident was not admitted in violation of N.C.G.S. § 7B-2101 or *Miranda*. The requirement that an individual involved in a motor vehicle accident remain on the scene does not equate to a restraint on that individual's freedom equivalent to "a formal arrest" and the juvenile did not establish that the officer's inquiry subjected him to even a minimal restraint on his freedom of movement or his ability to act as he chose.

**3. Confessions and Incriminating Statements—juvenile—statements following car wreck**

The voluntariness challenge to the admission of a juvenile's statement to an officer lacked merit where the thirteen-year old was charged with offenses arising from having driven and wrecked a car and argued that the necessity created by N.C.G.S. § 20-166(c1) for him to respond to an officer's questions meant that his admission that he was the driver of the wrecked vehicle was made in violation of his constitutional right against compulsory self-incrimination. The mere requirement that an individual disclose his name to an investigating officer on the scene of a motor vehicle accident does not necessarily have incriminating effect and the record contains no additional information suggest-

**IN RE A.N.C.**

[225 N.C. App. 315 (2013)]

ing that his statement resulted from any coercive conduct on the part of the officer.

**4. Juveniles—delinquency—reckless driving**

The trial court erred by denying a juvenile's motion to dismiss the petition alleging that he be adjudicated delinquent for reckless driving. The mere fact that an unlicensed driver ran off the road and collided with a utility pole did not suffice to establish a violation of N.C.G.S. § 20-140(b).

**5. Juveniles—delinquency—unauthorized use of motor vehicle**

The trial court erred by denying a juvenile's motion to dismiss a petition that he be adjudicated delinquent for committing the offense of unauthorized use of a motor vehicle. The mere fact that an underaged, unlicensed individual operated a motor vehicle registered to another person did not, without more, suffice to establish the required lack of consent.

**6. Evidence—juvenile's admission—corpus delicti rule**

Although a juvenile contended that the record did not contain sufficient evidence to support a determination that he operated a motor vehicle without being properly licensed on the basis of the *corpus delicti* rule, the record contained ample additional evidence tending to establish the trustworthiness of the juvenile's admission, thereby adequately supporting the trial court's denial of the juvenile's motion to dismiss.

Appeal by juvenile from adjudication and disposition orders entered 16 December 2011 by Judge Denise S. Hartsfield in Forsyth County District Court. Heard in the Court of Appeals 27 September 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Eryn E. Linkous, for the State.*

*Mark L. Hayes for Juvenile-Appellant.*

ERVIN, Judge.

Juvenile A.N.C., Jr.,[1] appeals from orders placing him on juvenile probation subject to certain specified terms and conditions based upon determinations that he had engaged in the unauthorized use of

_____

1. A.N.C., Jr., will be referred to throughout the remainder of this opinion as "Andrew," a pseudonym used for ease of reading and to protect the juvenile's privacy.

IN RE A.N.C.

[225 N.C. App. 315 (2013)]

a motor vehicle, operated a motor vehicle without being properly licensed to do so, and operated a motor vehicle in a reckless manner. On appeal, Andrew contends that the trial court committed plain error by admitting into evidence a statement that he had made to the investigating officer and by denying his motion to dismiss the juvenile petitions that had been issued against him for insufficiency of the evidence. After careful consideration of Andrew's challenges to the trial court's orders in light of the record and the applicable law, we conclude that the trial court's orders should be affirmed in part and reversed in part and that this case should be remanded to the Forsyth County District Court for the entry of a new dispositional order.

## I. Factual Background

### A. Substantive Facts

On 12 July 2011, Officer J. O. Singletary of the Winston-Salem Police Department received a call concerning a motor vehicle accident. After arriving at the accident scene, Officer Singletary observed a motor vehicle that had collided with a utility pole. The vehicle, which was still warm at the time of Officer Singletary's arrival, was registered to Andrew's mother.

At that point, Officer Singletary noticed Andrew and two other juveniles, who were located about fifty feet from the wreckage and who were "walking briskly" away from the scene. After making this observation, Officer Singletary questioned all three juveniles concerning what had happened. After a five minute conversation, Andrew, who was thirteen years old at the time, admitted that he had been driving the wrecked vehicle.

### B. Procedural History

On 25 August 2011, petitions alleging that Andrew should be adjudicated a delinquent juvenile on the grounds that he had committed the offenses of reckless driving in violation of N.C. Gen. Stat. § 20-140(b), operating a motor vehicle without being properly licensed to do so in violation of N.C. Gen. Stat. § 20-7(a), and unauthorized use of a motor vehicle in violation of N.C. Gen. Stat. § 14-72.2 were filed. On 15 December 2011, the petitions that had been filed against Andrew came on for hearing before the trial court. At the conclusion of the adjudication hearing, the trial court adjudicated Andrew to be a delinquent juvenile based upon a determination that he had committed the offenses of unauthorized use of a motor vehicle, operating a motor vehicle without being properly licensed to do so, and reckless dri-

ving. After conducting the required dispositional hearing, the trial court ordered that Andrew be placed on juvenile probation subject to a number of terms and conditions, including, but not limited to, a requirement that he cooperate with a specified treatment program and attend school daily in the absence of a valid excuse. Andrew noted an appeal to this Court from the trial court's adjudication and dispositional orders.

## II.  Legal Analysis

### A.  Admissibility of Andrew's Statement

In his initial challenge to the trial court's orders, Andrew contends that the trial court erred by admitting evidence to the effect that he had acknowledged having driven the wrecked vehicle on the grounds that the admission of the challenged evidence violated N.C. Gen. Stat. § 7B-2101, his rights under the decision of the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and his federal and state constitutional rights to be free from compulsory self-incrimination. We do not find Andrew's arguments to be persuasive.

**[1]** As an initial matter, we note that Andrew did not assert his challenge to the admission of the relevant portion of Officer Singletary's testimony in the court below. Although Andrew argues that his challenge to the admission of the testimony in question based upon N.C. Gen. Stat. § 7B-2101(d) rests upon a statutory mandate which is deemed preserved for purposes of appellate review despite the absence of a contemporaneous objection, *State v. Jones,* 336 N.C. 490, 497, 445 S.E.2d 23, 26 (1994) (citing *State v. Ashe,* 314 N.C. 28, 39-40, 331 S.E.2d 652, 659 (1985), the Supreme Court has flatly held that challenges to the admissibility of evidence based upon N.C. Gen. Stat. § 7B-2101 must be raised by means of a motion to suppress in order to preserve any challenge to the admission of such evidence for appellate review. *State v. Jenkins,* 311 N.C. 194, 204, 317 S.E.2d 345, 351 (1984) (addressing a claim asserted pursuant to former N.C. Gen. Stat. § 7A-595(a)). Thus, the only basis upon which Andrew is entitled to assert any of his challenges to the admission of his statement to Officer Singletary before the Court is in the event that he can establish the existence of plain error. *State v. Muhammed,* 186 N.C. App. 355, 359, 651 S.E.2d 569, 573 (2007), *appeal dismissed,* 362 N.C. 242, 660 S.E.2d 537 (2008).

"In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without

any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4). An alleged error rises to the level of plain error when it is " 'so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir. 1982), *cert. denied,* 459 U.S. 1018, 103 S. Ct. 381, 74 L. Ed. 2d. 513 (1982)). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan,* 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993). As a result, we review Andrew's challenges to the admission of his statement to Officer Singletary utilizing a plain error standard of review.

### 1. Custodial Interrogation

[2] According to N.C. Gen. Stat. § 7B-2101(b), "no in-custody admission or confession resulting from interrogation may be admitted into evidence unless the confession or admission was made in the presence of the juvenile's parent, guardian, custodian, or attorney." Similarly, N.C. Gen. Stat. § 7B-2101(d) provides that, "[b]efore admitting into evidence any statement resulting from custodial interrogation, the court shall find that the juvenile knowingly, willingly, and understandingly waived the juvenile's rights," with the court being precluded from finding that a "knowing, willing, and understanding" waiver had occurred if the juvenile was not informed of his right to have a parent present. *State v. Fincher,* 309 N.C. 1, 11, 305 S.E.2d 685, 692 (1983). Finally, the decision of the United States Supreme Court in *Miranda,* 384 U.S. at 444-45, 86 S. Ct. at 1612, 16 L. Ed. 2d at 706-07, specifies that a suspect subjected to custodial interrogation must be informed that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed," before any statement made during the course of such an interrogation can be used against him at trial. As a result, according to well-established law, "*Miranda* warnings and the protections of N.C. [Gen. Stat.] § 7B-2101 apply only to custodial interrogations." *In re W.R.,* 363 N.C. 244, 247, 675 S.E.2d 342, 344 (2009) (citing *In re W.R.,* 179 N.C. App. 642, 645, 634 S.E.2d 923, 926 (2006)). In view of the fact that Andrew was never advised of his rights pursuant to N.C. Gen. Stat. § 7B-2101 and *Miranda,* the critical question for our deter-

mination is the extent, if any, to which Andrew was subjected to a custodial interrogation.

> The test for determining if a person is in custody is whether, considering all the circumstances, a reasonable person would not have thought that he was free to leave because he had been formally arrested or had had his freedom of movement restrained to the degree associated with a formal arrest.

*Id.* at 248, 675 S.E.2d at 344. In determining whether a juvenile has been subjected to custodial interrogation, a reviewing court must take a juvenile's age into account "so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer." *J.D.B. v. North Carolina,* ___ U.S. ___, ___, 131 S. Ct. 2394, 2406, 180 L. Ed. 2d 310, 326 (2011).

In attempting to persuade us that he was being subjected to a custodial interrogation at the time that he admitted having driven the wrecked vehicle, Andrew points to the fact that the law required him to stay at the scene of the accident and contends that, given that he was attempting to leave the scene of the accident by walking "briskly" away at the time of Officer Singletary's arrival, the fact that he remained on the scene after being stopped by Officer Singletary meant that he was "in custody" for purposes of N.C. Gen. Stat. § 7B-2101 and *Miranda.* Neither argument is persuasive.

Admittedly, North Carolina law requires an individual to "remain with the vehicle at the scene of the crash until a law enforcement officer completes the investigation of the crash or authorizes the driver to leave." N.C. Gen. Stat. § 20-166(c). The General Assembly enacted N.C. Gen. Stat. § 20-166 for the purpose of facilitating the investigation of motor vehicle accidents. *State v. Smith,* 264 N.C. 575, 577, 142 S.E.2d 149, 151 (1965) (stating that "[t]he purpose of the requirement that a motorist stop and identify himself is to facilitate investigation"); *State v. Fearing,* 48 N.C. App. 329, 334, 269 S.E.2d 245, 247-48 (1980) (stating that "[t]he general purpose of this statute is to facilitate investigation of automobile accidents and to assure immediate aid to anyone injured by such collision"), *aff'd in part and rev'd in part on other grounds,* 304 N.C. 471, 284 S.E.2d 487 (1981). Aside from the fact that Andrew did not appear to feel constrained by this legal requirement, given his attempt to leave the scene, we are unable to equate a requirement that an individual involved in a motor vehicle

accident remain on the scene of the accident with a restraint on that individual's freedom equivalent to "a formal arrest." *W.R.*, 363 N.C. at 248, 675 S.E.2d at 344. For example, an individual involved in an accident is typically not handcuffed or confined to a specific location, such as a jail cell or the back seat of a patrol vehicle, but is, instead, free to walk around the immediate vicinity, talk to others who are present, and contact persons who are not present. As a result, we reject the first argument that Andrew advances in support of his claim to have been subjected to a custodial interrogation at the time that he admitted having driven the wrecked vehicle.[2]

Andrew's second argument in support of this contention is equally without merit. In the event that we were to adopt the position espoused in Andrew's brief, any lawful inquiry by an officer at the scene of a motor vehicle accident would automatically be converted into a custodial interrogation. Andrew has not established that Officer Singletary's inquiry subjected him to even a minimal restraint on his freedom of movement or his ability to act as he chose. Even if Andrew did not feel free to go anywhere he wished at the time of his conversation with Officer Singletary, "the fact that a defendant is not free to leave does not necessarily constitute custody for purposes of *Miranda.*" *State v. Benjamin*, 124 N.C. App. 734, 738, 478 S.E.2d 651, 653 (1996) (holding that no custodial interrogation for *Miranda*-related purposes occurred during a legitimate pat-down of the defendant, during which an officer found an object that the defendant admitted to be crack cocaine). Based on similar logic, the United States Supreme Court held in *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S. Ct. 3138, 3150, 82 L. Ed. 2d 317, 334-35 (1984), that "[t]he . . . "noncoercive aspect of ordinary traffic stops" necessitates the conclusion "that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda.*" Therefore, in conducting a routine traffic stop, an "officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions" without necessitating the administration of *Miranda* warnings. *Id.* at 439, 104 S. Ct. at 3150, 82 L. Ed. 2d at 334. Thus, we conclude that Officer Singletary did not subject Andrew to custodial interrogation during the course of his roadside investigation into the accident in which Andrew was

---

2. The fact that Officer Singletary ran approximately 50 feet to catch up with Andrew does not establish that Andrew was "in custody" for purposes of N.C. Gen. Stat. § 7B-2101 and *Miranda* given the absence of any indication that anything that Officer Singletary did subjected Andrew to a restraint that was tantamount to the loss of liberty inherent in a formal arrest.

involved. *State v. Clay*, 297 N.C. 555, 559, 256 S.E.2d 176, 180 (1979) (stating that "[n]either *Miranda* warnings nor waiver of counsel is required when police activity is limited to general on-the-scene investigation"), *overruled on other grounds in State v. Davis*, 305 N.C. 400, 415, 290 S.E.2d 574, 583 (1982). As a result, we conclude that Officer Singletary's testimony that Andrew acknowledged having driven the vehicle involved in the accident was not admitted in violation of N.C. Gen. Stat. § 7B-2101 or *Miranda*.

## 2. Voluntariness

**[3]** Secondly, Andrew contends that evidence concerning his statement to Officer Singletary should have been excluded as having been involuntarily made. More specifically, Andrew argues that the necessity created by N.C. Gen. Stat. § 20-166(c1) for him to respond to Officer Singletary's questions necessitates the conclusion that his admission that he was the driver of the wrecked vehicle was made in violation of his constitutional right against compulsory self-incrimination. We do not find Andrew's argument persuasive.

According to the Fifth Amendment to the United States Constitution, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. As Andrew notes, N.C. Gen. Stat. § 20-166(c) provides, in pertinent part, that "[t]he driver of any vehicle, when the driver knows or reasonably should know that the vehicle which the driver is operating is involved in a crash which results" "[o]nly in damage to property" "shall immediately stop the vehicle at the scene of the crash" and, in the event that "the damaged property is a guardrail, utility pole, or other fixed object owned by the Department of Transportation, a public utility, or other public service corporation," "give his or her name, address, driver's license number and the license plate number of his vehicle" "to the nearest peace officer." Andrew argues that, given that he was under an obligation to provide his "name, address, driver's license number and the license plate number of the vehicle involved in the crash" to Officer Singletary, his admission that he had been driving the wrecked vehicle was necessarily obtained involuntarily.

In seeking to persuade us of the validity of this argument, Andrew appears to place primary reliance upon *New Jersey v. Portash*, 440 U.S. 450, 459, 99 S. Ct. 1292, 1297, 59 L. Ed. 2d 501, 510 (1979), in which the United States Supreme Court held that immunized grand jury testimony obtained as the result of the defendant's compliance with a grand jury subpoena was "the essence of coerced testimony"

and could not be used to impeach the defendant's trial testimony. However, the principle set out in *Portash* is not applicable to the sort of statutory provision at issue in this case. As the United State Supreme Court stated in *California v. Byers*, 402 U.S. 424, 425, 430-34, 91 S. Ct. 1535, 1539-41, 29 L. Ed. 2d 9, 16, 18-21 (1971) (plurality opinion), which addressed the validity of a defendant's Fifth Amendment challenge to "[a] so-called 'hit and run' statute which requires the driver of a motor vehicle involved in an accident to stop at the scene and give his name and address," such statutes are "in effect in all 50 States and the District of Columbia;" are "essentially regulatory" and intended to implement "the state police power to regulate use of motor vehicles;" and do not violate the Fifth Amendment given that the provision of a name simply "identifies but does not by itself implicate anyone in criminal conduct." Simply put, there is "no constitutional right . . . to flee the scene of an accident in order to avoid the possibility of legal involvement." *Id.* at 434, 91 S. Ct. at 1541, 29 L. Ed. 2d at 21. Thus, since "the Fifth Amendment privilege may not be invoked to resist compliance with a regulatory regime constructed to effect the State's public purposes unrelated to the enforcement of its criminal laws," *Baltimore City Dept. of Social Servs. v. Bouknight*, 493 U.S. 549, 556, 110 S. Ct. 900, 905, 107 L. Ed. 2d 992, 1000 (1990); since the mere requirement that an individual disclose his name to an investigating officer on the scene of a motor vehicle accident does not necessarily have incriminating effect;[3] and since the record contains no additional information tending to suggest that Andrew's admission that he had been driving the wrecked vehicle resulted from any coercive conduct on the part of Officer Singletary, we conclude that Andrew's voluntariness challenge to the admission of his statement to Officer Singletary lacks merit. As a result, since none of Andrew's challenges to the admission of Officer Singletary's testimony to the effect that he had acknowledged having been the driver of the wrecked vehicle have merit, the trial court did not err, much less commit plain error, by receiving and considering the challenged portion of Officer Singletary's testimony. *State v. Shuford*, 337 N.C. 641, 647, 447 S.E.2d 742, 745 (1994) (stating, "[w]e find no error in the above instructions and, consequently, no plain error").

---

3. Although Andrew attempts to equate the provision of his name and address with an admission that he unlawfully operated the wrecked vehicle, we do not see any reason why such evidence of his identification necessarily constituted an admission that he had been engaged in unlawful conduct.

IN RE A.N.C.

[225 N.C. App. 315 (2013)]

## B. Sufficiency of the Evidence

Secondly, Andrew argues that the trial court erred by denying his motion to dismiss the petitions alleging that he should be adjudicated a delinquent juvenile for committing the offenses of unauthorized use of a motor vehicle, reckless driving, and operating a motor vehicle without being properly licensed to do so. Although the trial court correctly refused to dismiss the petition alleging that Andrew should be adjudicated delinquent for driving without a valid operator's license, it erred by denying his motions to dismiss the petitions alleging that Andrew should be adjudicated delinquent for committing the offenses of reckless driving and unauthorized use of a motor vehicle.

A "juvenile is therefore 'entitled to have the evidence evaluated by the same standards as apply in criminal proceedings against adults.'" *In re Heil,* 145 N.C. App. 24, 28, 550 S.E.2d 815, 819 (2001) (quoting *In re Dulaney,* 74 N.C. App. 587, 588, 328 S.E.2d 904, 906 (1985)). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell,* 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "[U]pon a motion to dismiss in a criminal action, all of the evidence, whether competent or incompetent, must be considered in the light most favorable to the state, and the state is entitled to every reasonable inference therefrom." *State v: Smith,* 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980). "This Court reviews the trial court's denial of a motion to dismiss *de novo.*" *State v. Smith,* 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

### 1. Reckless Driving

[4] According to N.C. Gen Stat. § 20-140(b), "[a]ny person who drives any vehicle upon a highway or any public vehicular area without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property shall be guilty of reckless driving." Although the record contains evidence which would suffice to show that Andrew was driving a vehicle registered to his mother at the time of the wreck and that the vehicle that he was driving had collided with a utility pole, the record contains no evidence tending to show that the collision resulted from any careless or reckless driving on Andrew's part.[4] The mere fact that an unli-

---

4. Although the State claims that Andrew was driving at a high rate of speed prior to the collision, we are unable to find any testimony to that effect in the record developed in the trial court.

censed driver ran off the road and collided with a utility pole does not suffice to establish a violation of N.C. Gen. Stat. § 20-140(b). As a result, the trial court erred by denying Andrew's motion to dismiss the petition alleging that he should be adjudicated a delinquent juvenile for driving in a reckless manner.

## 2. Unauthorized Use of a Motor Vehicle

**[5]** "A person is guilty of [unauthorized use of a motor vehicle] if, without the express or implied consent of the owner or person in lawful possession, he takes or operates an aircraft, motorboat, motor vehicle, or other motor-propelled conveyance of another." N.C. Gen. Stat. § 14-72.2(a). Although, as we have already noted, the record contains evidence tending to show that Andrew was operating a motor vehicle registered to his mother at the time that this vehicle collided with a utility pole, the record contains no evidence tending to show that Andrew was utilizing the vehicle in question without his mother's consent. The mere fact that an under-aged, unlicensed individual operated a motor vehicle registered to another person does not, without more, suffice to establish the required lack of consent. As a result, the trial court erred by denying Andrew's motion to dismiss the petition alleging that he should be adjudicated delinquent for committing the offense of unauthorized use of a motor vehicle.

## 3. No Operator's License

**[6]** According to N.C. Gen. Stat. § 20-7(a), "a person must be licensed by the Division" "[t]o drive a motor vehicle on a highway." Although the record contains ample evidence tending to show that Andrew admitted having driven the vehicle that collided with a utility pole, Andrew contends that the record does not contain sufficient evidence to support a determination that he operated a motor vehicle without being properly licensed to do so on the basis of the *corpus delicti* rule. We do not find Andrew's argument persuasive.[5]

The *corpus delicti* rule prohibits convictions resting upon a criminal defendant's confession in the absence of proof that "the injury or harm constituting the crime occurred" and that "this injury or harm was caused by someone's criminal activity." *State v. Parker*, 315 N.C.

---

5. Although Andrew's argument in reliance on the "*corpus deliciti* rule" encompasses all three of the offenses that he is alleged to have committed, we need not address this argument as it pertains to the trial court's determinations that Andrew should be adjudicated delinquent for committing the offenses of reckless driving and unauthorized use of a motor vehicle given our decision that the record did not contain sufficient evidence to support a finding that Andrew committed those offenses.

222, 231, 337 S.E.2d 487, 492 (1985). The principal purpose of the *corpus delicti* rule is ensuring "that a defendant will [not] be convicted of a crime that has not been committed." 315 N.C. at 235, 337 S.E.2d at 494. After a detailed analysis of the nature and proper scope of the *corpus delicti* rule, the Supreme Court has held that:

> when the State relies upon the defendant's confession to obtain a conviction [in a non-capital case], it is no longer necessary that there be independent proof tending to establish the *corpus delicti* of the crime charged if the accused's confession is supported by substantial independent evidence tending to establish its trustworthiness, including facts that tend to show the defendant had the opportunity to commit the crime.

*Id.* at 236, 337 S.E.2d at 495.

The record developed in the trial court is more than sufficient to support a determination that Andrew operated a motor vehicle without being properly licensed to do so. Aside from Andrew's admission that he had been operating the wrecked vehicle, the record contains ample evidence that a crime was actually committed. According to Officer Singletary, the motor vehicle which he discovered upon arrival at the accident scene was still warm, a fact which tends to show that this car had recently been driven. In addition, the record clearly establishes that the only persons in the vicinity of the accident scene at the time of Officer Singletary's arrival were Andrew and his friends and that the wrecked vehicle was registered to Andrew's mother. As a result, we conclude that the record contains ample additional evidence tending to establish the trustworthiness of Andrew's admission, thereby adequately supporting the trial court's denial of Andrew's motion to dismiss the allegation that he should be adjudicated delinquent for operating a motor vehicle without being properly licensed to do so. *State v. Trexler,* 316 N.C. 528, 333, 342 S.E.2d 878, 881 (1986) (holding that the record contained sufficient evidence to support the defendant's impaired driving conviction in addition to his confession given that an "overturned automobile was lying in the middle of the road;" that "a single person was seen leaving the automobile;" that, "when defendant returned to the scene, he appeared to be impaired as a result of using alcohol;" that "defendant later blew 0.14 on a breathalyzer;" and that "the wreck was otherwise unexplained").

IN RE D.C.

[225 N.C. App. 327 (2013)]

III. Conclusion

Thus, for the reasons set forth above, we hold that the trial court erred by denying Andrew's motion to dismiss the petitions alleging that he should be adjudicated delinquent for committing the offenses of reckless driving and unauthorized use of a motor vehicle and that the trial court properly denied Andrew's motion to dismiss the petition alleging that he should be adjudicated delinquent for operating a motor vehicle without being properly licensed to do so. As a result, the trial court's adjudication orders are affirmed in part and reversed in part, with this case being remanded to the Forsyth County District Court for any needed additional proceedings not inconsistent with this opinion, including the entry of a new disposition order.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Judges ROBERT N. HUNTER, JR., and McCULLOUGH concur.